IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:04cr185-H |
| ROBERT EARL DOWD | ) | (WO) |

ORDER

Defendant Robert Dowd was convicted on all counts of a 16-count indictment. The first count charged Dowd with the robbery of a postmaster by the use of a dangerous weapon, and the jury made the special finding that Dowd had used a firearm during the robbery. The second count charged Dowd of using or carrying a firearm in furtherance of a crime of violence, in violation of 18 U.S.C.A. § 924(c). Counts three through fifteen charged Dowd with embezzling, stealing or converting postal money orders; and count 29 charged Dowd with being a felon in

knowing possession of a firearm.[1]

Now before the court are the defendant's motions for judgment of acquittal and for a new trial (doc. nos. 160 & 161) based upon the inclusion of count 29 in the indictment and upon the government's alleged failure to prove beyond a reasonable doubt that the weapon used was a firearm. For the reasons discussed below, the motions will be denied.

## I. STANDARD OF REVIEW

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although the decision to grant a new trial rests within the sound discretion of the trial judge, United States v. Champion, 813 F.2d 1154, 1170 (11th Cir. 1987), the "court may not reweigh the evidence and set aside the verdict simply

---

1. The counts' disjointed numbering is the result of the indictment originally having included charges against a co-defendant, whose trial was later severed from that of Dowd.

because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Martinez, 763 F.2d 1297, 1312-13 (11th Cir. 1986).

In considering motions for acquittal, the court does not have the opportunity to enter the judgment that it thinks most fair, appropriate, or just based on the court's own review of the evidence and assessments of witness credibility. The court must review the evidence independently but only while viewing the evidence in the light most favorable to the government, resolving any conflicts in the government's favor, and accepting all reasonable inferences tending to support the government's case. The court need not find that the evidence overwhelms every reasonable hypothesis of innocence but instead must determine if the jury reasonably construed the evidence to find the defendant guilty beyond a reasonable doubt. United States v. Ward, 197 F.3d 1076,

1079 (11th Cir. 1999).

## II. DISCUSSION

### A. Proof of a Firearm Beyond a Reasonable Doubt

Dowd first argues that the "government has failed to prove beyond a reasonable doubt and the evidence is insufficient under Count 1(B) of the Verdict form-the special interrogatory, and Count 2 for the jury to find that the weapon was a 'firearm.'"[2] In support of his argument, Dowd's assertions include the following:

- Dowd made a statement to a United States Postal Inspector that the weapon used was a pellet gun;
- The weapon portrayed in a video of the robbery resembled a pellet gun;
- Various pellet guns were stolen and sold from a local retail store around the time of the

2. Def.'s Motion for Judgment of Acquittal and for New Trial in Regard to the Pellet Gun (doc. no. 160), at p. 1.

robbery;

- Pellet-pistol ammunition was subsequently found in Dowd's trailer;
- The government never found the alleged firearm; and
- The postmaster who was robbed "was not an expert on firearms, did not own a pistol, only saw the 'gun' for several seconds during the entire robbery, and therefore could not testify that it was a 'firearm' as defined...."[3]

In most of these assertions, the defendant is simply substituting his judgment for that of the jury. For example, the postal inspector to whom Dowd made a statement regarding the robbery testified that Dowd had referred simply to a "gun" on repeated occasions, occasionally referring to the weapon as a "water gun" or, at other times, as a "pellet gun." It was up to the jury to determine whether Dowd's occasional references to a

---

3. Id. at p. 2.

"pellet gun" were trust-worthy and were to be accorded more weight than his references to a "gun."

Similarly, the jury considered the surveillance video depicting the robbery and did not agree with the defendant that he had used a pellet gun during the robbery. The surveillance video was shown once to the jury during trial, and, during deliberations, the jury again reviewed the video, pausing it at intervals during which Dowd brandished the weapon. There is every indication that the jury took great pains to focus on the gun's appearance.

Additionally, in considering the facts that pellet guns had been bought or sold around the time of the robbery from a local retail store and that pellet-pistol ammunition was found in Dowd's trailer, the jury reached a different conclusion from that which Dowd hoped that they would reach. There is nothing inherently unreasonable in the jury's rejection of the argument that thefts or purchases of pellet guns from a local retail

store force the conclusion that the defendant used a pellet gun in a robbery. Other than the fact that the store and the defendant were situated roughly along the same latitude and longitude, there were few, if any, other ties between the thefts or purchases and the defendant. Nor does the fact that pellet-gun parts were found in the defendant's trailer necessarily mean that a pellet gun was used to rob a post office. The jury was entitled to accord greater weight to the postmaster's testimony that he believed that the object in Dowd's hand, which he personally observed, was a real gun. In short, Dowd's assertions do not "preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Martinez, 763 F.2d at 1312-13.

With respect to the general sufficiency of the trial evidence to prove, beyond a reasonable doubt, that Dowd's weapon was a firearm, the government cites two persuasive cases in support of its position. In United States v.

Williams, 979 F.2d 186 (11th Cir. 1992), the court held that the government need not present the actual gun at trial in order for a jury to conclude that the weapon used was a firearm under 18 U.S.C.A. § 924(c). In Williams, as in the instant case, there was eyewitness testimony regarding the firearm; however, in Williams, unlike in the instant case, the eyewitness was a trained law enforcement officer.

Nonetheless, in United States v. Hunt, 187 F.3d 1269 (11th Cir. 1999), the Eleventh Circuit concluded that "non-expert witness testimony may be sufficient to establish that a defendant was using a 'firearm' for purposes of sustaining a conviction under § 924(c)(1)." Id. at 1270-71. The court went on to note, "We reject the idea that the government must show to a scientific certainty that a defendant is carrying a device that fires projectiles by means of an explosive. The government need not offer the gun itself into evidence or produce an expert witness to identify a 'firearm.'" Id.

at 1271. In Hunt, non-expert witness testimony coupled with surveillance shots were sufficient for a jury to draw "a reasonable inference that the object in [the defendant's] hand was a real gun and not a toy." Id

Similarly, in this case, the court will not disturb the jury's reasonable inference that eyewitness testimony together with evidence of a surveillance video and the defendant's repeated references to a "gun" in his statement to a postal inspector concerning the robbery were sufficient to conclude that Dowd's weapon was, beyond a reasonable doubt, a firearm.

### B. Inclusion of Count 29 in the Indictment

Count 29 charged Dowd with being an ex-felon in possession of a firearm in violation of 18 U.S.C.A. § 922(g)(1), although no past felonies were specified in the indictment. This charge relates to Dowd's sale, days prior to the robbery, of a firearm to a Mr. Ellis, and Dowd's subsequent attempt, hours before the robbery, to

borrow that same firearm. Dowd asserts that he "suffered undue prejudice as a result of count 29" because of the "forced ... stipulation to his ex-felon status."[4]

Under Fed. R. Crim. P. 8(a), "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are connected with or constitute parts of a common scheme or plan." According to the government, the inclusion of count 29 "was related to the defendants' scheme and plan to commit the armed robbery of the postal station on August 30, 2004."[5] In denying one of the defendant's earlier motions to strike this count, the court held that,

> "To rebut this contention [that the weapon was a pellet gun] and buttress the testimony of the postal employee that the gun was real, the government will properly attempt to show that just

---

4. Def.'s Motion for New Trial Based upon Inclusion of Count 29 (doc. no. 161), at p. 3.

5. Govt.'s Response to Def. Dowd's Motion for New Trial Based upon Inclusion of Count 29 (doc. no. 164), at p. 5.

> days before the robbery, Dowd sold a gun and then attempted, on the day of the robbery, to borrow it back. Thus, the facts underlying [the] count ... and the other counts are part of a common scheme...."[6]

Dowd attempts to analogize his case to United States v. Weaver, 905 F.2d 1466 (11th Cir. 1990), in which the court determined that joinder of cocaine and marijuana conspiracies was erroneous where the two conspiracies did not overlap temporally and constituted distinct transactions that applied to separate groups of defendants. The "facts underlying the various acts relating to the marijuana conspiracy and to the cocaine conspiracy are not 'so closely connected that proof of such acts is necessary to establish each offense,' nor is there a 'substantial identity of facts and participants involving similar acts in further of a common plan.'" Id. at 1478 (quoting United States v. Gentile, 495 F.2d 626, 630 (5th Cir. (1974)) and United

6. Order (doc. no. 131).

States v. Nettles, 570 F.2d 547, 551 (5th Cir. 1978)).

In contrast, in the instant case, the sale of Dowd's revolver days before the robbery and efforts to borrow it back hours before the commission of the armed robbery are not distinct transactions that fail to overlap temporally or factually with the events underlying the indictment's other counts.  In fact, Dowd's case is more analogous to United States v. Dominguez, 226 F.3d 1235 (11th Cir. 2000), in which the government successfully joined cocaine distribution and mortgage fraud charges in the same indictment, despite the defendant's objections under Fed. R. Crim. P. 8(a) and 14.  These charges did not meet the first two criteria for joinder, neither being of the "same or similar character" nor "based on the same act or transaction."  Fed. R. Crim. P. 8(a).  As the court noted, "[t]he counts containing the mortgage fraud charges make no reference to the preceding counts containing the drug charges or to any drug-related activity."  Id. at 1238.  However the government

successfully argued that the drug and mortgage-fraud charges constituted part of a "common scheme or plan," Fed. R. Crim. P. 8(a), because proof of the drug-related charges provided the motive for the alleged mortgage-fraud. "Regardless of whether both sets of charges involve the presentation of the same evidence, the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes." Id. at 1239. See also United States v. Kopituk, 690 F.2d 1289 (11th Cir. 1982) (finding joinder of tax-offense charges with racketeering charges to be proper because the filing of false income tax returns maximized the benefits enjoyed from the racketeering).

Although Dowd's sale of a firearm and later efforts to borrow it did not necessarily provide the motive for his other offenses, the court finds that Dowd's possession and sale of a firearm prior to the robbery and efforts to borrow that same firearm hours before the

robbery are sufficiently connected to the postoffice robbery to warrant joinder, particularly where the identity of the weapon used during the robbery was hotly contested at trial.

## III. CONCLUSION

For the reasons stated above, it is ORDERED that defendant Robert Dowd's motions for judgment of acquittal and for a new trial (doc. nos. 160 & 161) are denied.

DONE this the 10th day of May, 2005.

Truman M. Hobbs

Judge Truman M. Hobbs

United States District Judge